**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CATHERINE ISAAC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-1661** |
| | ) | **Electronically Filed** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

I.      **Introduction**

Plaintiff Catherine Isaac ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §1381, *et.seq.*  Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment on the record developed during the administrative proceedings.  Doc. Nos. 8 and 10.

Upon consideration of the Commissioner's decision, the parties' motions for summary judgment and accompanying briefs, and the evidence contained in the administrative record, the Court finds that the determination of the Commissioner should be remanded to the administrative law judge ("ALJ"), pursuant to 42 U.S.C. §405(g), for further consideration. Specifically, the Court finds that the ALJ failed to afford Plaintiff a heightened duty of care and, furthermore, failed to fully develop the administrative record before making his determination.  Therefore, the Court will grant

1

Plaintiff's motion for summary judgment and deny the Commissioner's motion for summary judgment.

## II.    Procedural History

Plaintiff applied for SSI on February 15, 2006, with a protective filing date of January 9, 2006, alleging disability due to fibromyalgia, depression and emotional distress, including anxiety and panic attacks, with an alleged onset date of January 1, 2005. R. at 51, 56. After the initial denial of Plaintiff's application by the state agency, she filed a timely request for a hearing before an ALJ on November 11, 2006. R. at 29.  On December 5, 2006, Plaintiff submitted a "Waiver of Your Right to Personal Appearance Before an Administrative Law Judge." On said waiver, Plaintiff stated that she did not want to appear in person at the hearing for the following reasons: "I have no transportation to get to Pittsburgh if the hearing is scheduled there.  I would also no have child care for my children on the day of the hearing." R. at 28.

Without holding an administrative hearing, the ALJ issued a decision on March 3, 2008 that was unfavorable to Plaintiff. R. at 20.  Specifically, the ALJ determined that Plaintiff was not disabled for the relevant time period under §1641(a)(3)(A) of the SSA.  *Id.*  Plaintiff's request for review of the ALJ's determination was denied by the Appeals Council on October 7, 2008. R.at 1-4, 10.

On December 8, 2008, Plaintiff commenced an action against the Commissioner by filing a complaint in this Court.  Doc. No. 3.  Plaintiff filed a motion for summary judgment and brief in support on April 6, 2009. Doc. Nos. 8 and 9. The Commissioner likewise filed a motion for summary judgment and brief in support on April 6, 2009. Doc. Nos. 10 and 11.   Said motions are the subject of this memorandum opinion.

## III. Statement of the Case

In his decision, dated March 3, 2008, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since January 9, 2006, the application date (20 C.F.R. 416.920(b) and 416.971 et.seq.).

2. The claimant has the following severe impairments: dysthymic disorder, panic disorder with agoraphobia, post-traumatic stress disorder and social phobia (20 C.F.R. 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: cannot perform complex- multi-step tasks. She thus has the residual functional capacity for a full range of unskilled work at all exertional levels. She is thus not disabled under the framework of medical-vocational rule 204.00 and pursuant to the Social Security Ruling 85-15.

5. The claimant is unable to perform any past relevant work (20 C.F.R. 416.965).

6. The claimant was born on April 20, 1966 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 416.964).

8. Transferability of job skills is not an issue in this case because the claimant is limited to unskilled work (20 C.F.R. 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 416.960(c) and 416.966).

10. The claimant has not be under a disability, as defined in the Social Security Act,

since January 9, 2006, the date the application was filed (20 C.F.R. 416.920(g)).

R. 16- 20.  Additionally, the ALJ determined that Plaintiff knowingly and voluntarily waived her right to personally appear and testify at a hearing.  R. 14.  Plaintiff argues that the ALJ erred by failing to adhere to the heightened duty owed to Plaintiff, an unrepresented claimant at the time of the administrative hearing. R. 21.

## IV.    Standards of Review

Judicial review of  the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding  standards under Title XVI; 42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v. Zebley*, 493 U.S.

---

[1]  Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

<u>Substantial Evidence</u>

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the

evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

### Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential

evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the

Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that the claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, the plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given the plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard,* 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

<u>Vocational Expert - Hypothetical Questions</u>

The determination of whether a claimant retains the RFC to perform jobs existing in the

workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings as to the claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[3] *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'"). Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); *see also Id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job

_____

[3]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the United States Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he or she must be found disabled if his or her condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but must set forth the reasons for his or her decision, and *specifically* explain why he or she found that the claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to his or her past employment or perform other substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions. Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d

Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence

in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (emphasis added); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim*. *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court

"little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct

a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4] Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they must always be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and

---

[4]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where

---

[5]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

**V.      Discussion**

In her brief in support of her motion for summary judgment, Plaintiff argues that the determination of the ALJ should be remanded because he failed to properly carry out the heightened duty he owed to Plaintiff as an unrepresented claimant, which resulted in "clear prejudice and/or

unfairness" to her. Doc. No. 9 at 6. Specifically, Plaintiff argues that the ALJ improperly determined that she knowingly and voluntarily waived her right to appear at the administrative hearing and thus failed to give her adequate opportunity to appear and present evidence in support of her claim. Doc. No. 9 at 7-10. Furthermore, Plaintiff argues that the ALJ failed to fully develop the record because he did not obtain pertinent medical records from her treating source at Vocational and Psychological Associates and her physician, Dr. Kostas, and as a result failed to consider any of the information provided in these records in his determination. Doc. No. 9 at 12-13. Additionally, Plaintiff argues that this evidence was provided to the Appeals Council, but "improperly ignored." Finally, Plaintiff contends that the ALJ erred in failing to secure the testimony of a vocational expert and instead relied on Social Security Ruling 85-15 in denying benefits. Doc. No. 9 at 19-20.

The Court agrees that, in this case, the ALJ failed to properly apply the heightened duty owed Plaintiff, as an unrepresented claimant and therefore finds remand appropriate. A social security claimant has a statutory right to receive meaningful notice and an opportunity to be heard before her claim for social security benefits can be denied. 20 C.F.R. §416.1450(a) ("Any party to a hearing has a right to appear before the administrative law judge . . . to present evidence and to state his or her position"). *See Brunner v. Astrue*, Civil Action No. 07-124, 2008 WL 4372726 at *5 (W.D. Pa. September 23, 2008) (quoting *Stoner v. Secretary of HHS*, 837 F.2d 759, 760-61 (6th Cir. 1988)). In the case of an unrepresented claimant, the ALJ has a heightened duty to "'assume a more active role'" in the administrative proceedings. *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980) (quoting *Dobrowlsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)). Indeed, the ALJ owes an unrepresented claimant a duty to develop the record, which requires that the ALJ "'scrupulously and

conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (quoting *Key v. Heckler*, 754 F.2d 1545, 1551 (9ᵗʰ Cir. 1985)) (internal quotations omitted). *See also Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) (citations omitted) (holding that due process and the SSA and corresponding regulations require full and fair proceedings).

The fact that a claimant is unrepresented alone will not be cause for remand. *Id.* (citing *Hess v. Secretary of HEW*, 497 F.2d 837, 840 n.4 (3d Cir. 1974)). However, "if it is clear that lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand or reversal." *Id.* (citing *Dobrowolsky*, 606 F.2d at 407; *Domozik v. Cohen*, 413 F.2d 5, 9 (3d Cir. 1969)). The adequacy of an ALJ's investigation is determined on a case-by-case basis. *Kattes*, 496 F.Supp. at 389 (citing *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1052 (6th Cir. 1983)). "The essential inquiry is whether 'the incomplete record reveals evidentiary gaps which result in prejudice to the claimant.'" *Massey v. Astrue*, Civil Action No. 07-426, 2008 WL 4425853 at *2 (W.D. Pa. September 30, 2008) (quoting *Gauthney v. Shalala*, 890 F.Supp. 401, 410 (E.D. Pa. 1995)).

Turning first to Plaintiff's argument that the ALJ erred in determining that she had properly waived her right to appear at the administrative hearing, the Court finds that remand is required as a result of the error in failing to provide Plaintiff, an unrepresented claimant, adequate information regarding whether or not a hearing would be held before the ALJ. Plaintiff contends that the ALJ erroneously relied upon a waiver dated December 5, 2006 in determining that she had waived her right to appear at the hearing. Doc. No. 9 at 7. Further, Plaintiff argues that, because she stated in said waiver that she was unable to attend a hearing in Pittsburgh due to transportation issues, the ALJ

had a duty to arrange alternative arrangements amenable to Plaintiff, in order to permit her to appear at a hearing. Doc. No. 9 at 8. In particular, Plaintiff argues, the ALJ failed to inform Plaintiff that a hearing office had opened at a location closer than Pittsburgh. Doc. No. 9 at 10. According to Plaintiff, the ALJ's failure to properly inform Plaintiff of alternative locations for a hearing and, further, his determination that Plaintiff had knowingly and voluntarily waived her right to a hearing resulted in prejudice to Plaintiff and requires remand. *Id.*

While a claimant has a statutory right to appear before an ALJ, she may knowingly and voluntarily waive that right. 20 C.F.R. §416.1450(b). The SSA provides:

> You [the claimant] may send the administrative law judge a waiver or a written statement indicating that you do not wish to appear at the hearing. You may withdraw this waiver any time before a notice of the hearing decision is mailed to you. Even if all the parties waive their right to appear at a hearing, the administrative law judge may notify them of a time and a place for an oral hearing, if he or she believes that a personal appearance or testimony by you or any other party is necessary to decide the case.

*Id. See also Brunner v. Astrue*, Civil Action No. 07-124 2008 WL 4372726 at *5 (W.D. Pa. September 23, 2008) (quoting *Stoner v. Secretary of HHS*, 837 F.2d 759, 760-61 (6th Cir. 1988); citing 20 C.F.R. §416.1450(b)). Several courts have adopted the test promulgated by Social Security Ruling 79-19, 1979 WL 15541 at * 1 (S.S.A., November 30, 1978), which provides that a written waiver of an administrative hearing, such as the one submitted by Plaintiff, will be valid when it complies with the following:

> (1) that the individual has been informed of the nature of the proceedings and of the right to be represented by counsel; (2) that the individual has a right to appear and testify at the hearing and to present evidence; (3) that additional evidence obtained through the individual's appearance and testimony may be of value to the ALJ in evaluating the issues; (4) that if the individual does not appear, the matter will be decided solely on the written evidence in the file plus any additional evidence

submitted by the claimant or obtained by the ALJ; (5) and that the individual may withdraw the waiver of the right to appear at the hearing any time prior to mailing of the notice of the decision.

*See e.g. Biswas v. Commissioner of Social Security*, No. 05-3828, 2007 WL 580523 at *1 (3d Cir. February 26, 2007) (citing *Stoner v. Sec'y of Health & Human Servs.*, 837 F .2d 759, 761 (6th Cir.1988); *Brunner*, 2008 WL 4372726 at *5 (citing SSR 79-19); *Reed v. Barnhart*, Civil Action No. 07-5099, 2008 WL 2835331 at *8 (D.N.J. July 18, 2008)).

Here, the waiver submitted by Plaintiff contained all of the requisite information regarding Plaintiff's rights. As such, the written waiver submitted by Plaintiff would be a valid waiver of her right to an administrative hearing. However, the Court finds that, in this case, the actions of the ALJ after the submission of this waiver are cause for remand. Specifically, the Court finds that the notice of confirmation of request for a hearing sent to Plaintiff in April 2007, *four months* after she sent the waiver, would certainly have the potential to confuse an unrepresented claimant and cause her to believe that she would indeed have a hearing as previously requested.

In this case in particular, Plaintiff indicated on her waiver that a reason she could not attend the hearing was lack of transportation to Pittsburgh. However, she later received a confirmation stating that a hearing would be scheduled and that she would be notified in advance of the time and location of her hearing. R. 30. In this case, no further follow up was provided to Plaintiff in regard to a hearing and no hearing was held prior to the ALJ's determination. As an unrepresented claimant, Plaintiff was entitled to a heightened duty of care in the administrative proceedings. *Reefer v. Barnhart*, 326 F.3d at 380. *See also Gauthney v. Shalala*, 890 F.Supp. 401, 410-11 (E.D. Pa. 1995). Here, the mistake of the hearing office, *i.e.*, sending an unrepresented claimant notice of a

pending hearing, which never occurred, resulted in unfairness to Plaintiff, insofar as she was not scheduled a hearing or otherwise given notice that no hearing would be held prior to the ALJ's determination. As such, she was not afforded the opportunity to present testimony in support of her claim. Therefore, the Court finds that remand is appropriate under §405(g).

Plaintiff further argues that the ALJ failed to apply a heightened duty of care to develop the record prior to his determination, insofar as he failed to obtain Plaintiff's complete medical history prior to determining that Plaintiff was not disabled. Doc. 9 at 11-12. Plaintiff argues that, while the ALJ was specifically aware that Plaintiff was receiving weekly mental health treatment at Vocational and Psychological Associates and had received counseling at New Castle Primary Health Network, he failed to attempt to obtain any treatment records from these sources. Doc. 9 at 13. The Court agrees here with Plaintiff, that the ALJ failed to fully develop the record by obtaining pertinent medical records prior to his determination.

The ALJ is required to apply a heightened standard in developing the record for an unrepresented claimant, even where there has been no administrative hearing. *Kattes v. Califano*, 496 F.Supp. 385, 389 (E.D. Pa. 1980). Plaintiff's disability report indicates that she began seeing a psychologist at Vocational and Psychological Services during the relevant time period. R. 79. While the ALJ had this information, he did not follow up or secure any medical records from this mental health care provider. Additionally, while the ALJ had evidence that Plaintiff received mental health treatment at New Castle Primary Health Network prior to 2007, he did not secure records pertaining to that treatment. Rather, in making his determination the ALJ relied on the opinions of two consultative physicians. R. 18. Specifically, the ALJ found that the objective medical evidence provided by Dr. Uran, a consultative psychologist who examined Plaintiff in August of 2006, and

23

the opinions of the Disability Determination Service were not consistent with Plaintiff's subjective complaints regarding her restrictions on daily activities and capacity to work. R. 19. However, the ALJ failed to secure and, therefore, failed to consider medical records from Plaintiff's treating physician at Vocational and Psychological Services for the relevant time period. By failing to obtain these records, he failed to fully develop the record. *Reefer v. Barnhart*, 326 F.3d at 380 (holding that, because the ALJ failed to secure pertinent evidence from Plaintiff's treating medical care providers pertaining to an alleged impairment, remand was appropriate). *See also Sloss v. Astrue*, Civil Action No. 07-344, 2008 WL 2355853 at *2-3 (W.D. Pa. June 9, 2008) (holding that, where the ALJ had notice of mental health treatment but failed to attempt to obtain any records related to that treatment, he failed to exercise his duty to develop the record); *Cf. Massey v. Astrue*, Civil Action No. 07-426, 2008 WL 4425853 at *3-4 (W.D. Pa. September 30, 2008) (holding that the ALJ did not fail to fully develop the record by failing to secure medical records from a treating physician because the ALJ had extensive records from several of the plaintiff's other medical care providers related to the alleged impairment). Indeed, it was the ALJ's duty, once he was aware that Plaintiff had been treated for these impairments, to probe further and secure evidence which would permit him to evaluate a full record. *Reefer*, 326 F.3d at 380.

Additionally, Plaintiff has offered these additional medical records to show that she was prejudiced by the ALJ's failure to develop the record. R. 117-160. Specifically, Plaintiff has offered the records of her treating psychologist from Vocational and Psychological services and her treating physician, Dr. Kostas at Primary Health Network. R. 117. These records indicate that Plaintiff saw a psychologist, Dr. Julie Uran, as early as August 1, 2006. R. 83. Dr. Uran diagnosed Plaintiff with Dysthymic Disorder, Panic Disorder with Agoraphobia and Post-Traumatic Stress Disorder at Axis

I of the DSM IV.  R. 86.  Additionally, at Axis III, Dr. Uran noted diagnoses of fibromyalgia, arthritis, headaches and diabetes. *Id.*  Dr. Uran also noted that Plaintiff had significant stressors and gave her a score of 55 on the Global Assessment of Functioning scale.  Additionally, records from Plaintiff's treating physician at Primary Health Network, Dr. Kostas,  indicate that Plaintiff was treated for diabetes and fibromyalgia.

First, the ALJ's failure to obtain these records also means that the ALJ failed to properly consider and, therefore, specifically accept or reject any of this evidence in making his determination. Furthermore, because the ALJ failed to consider this material evidence, he also failed to properly consider Plaintiff's subjective complaints of pain and limitations in relation to this objective medical evidence.

While Plaintiff is required to show that she was prejudiced by the ALJ's failure to fully develop the record prior to making his determination, *see Lanza v. Astrue*, Civil Action No. 08-301, 2009 WL 1147911 at *4-5 (W.D. Pa. April 28, 2009), Plaintiff is not required to establish a probability of success based on the medical evidence that the ALJ failed to consider.  *See Jozefick v. Shalala*, 854 F.Supp. 342, 349 (M.D. Pa. 1994).  Indeed, remand will be appropriate where a claimant successfully shows that the ALJ "failed to exercise his authority to attempt to fill significant evidentiary gaps that are material to the disability determination." *Id.* (citations omitted). The evidentiary gap left by the ALJ's failure to obtain all relevant medical records is sufficient cause for remanding this case under §405(g).

Plaintiff also argues that the Appeals Council improperly ignored this medical evidence on review. Doc. No. 9 at 14.  Specifically, Plaintiff argues that the updated mental health evidence constituted new and material evidence that should have been properly considered by the Appeals

Council.  *Id.* However, according to Plaintiff, the Council not only failed to consider the evidence, it failed to invoke any justification for its determination that the evidence was not new and material. *Id.*

The District Court may remand a determination to the ALJ to consider additional evidence submitted to the Appeal Council, even where the Appeals Council found no basis for review.  42 U.S.C. §405(g). *See also Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) (holding that, when a "claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner" when appropriate).  When a claimant offers evidence that was not before the ALJ, the Court may remand for further consideration of said evidence when the claimant shows that the evidence is new and material and that there is good cause why it was not presented to the ALJ. *Matthews*, 239 F.3d at 593.  As discussed above, in this case, the ALJ failed to properly apply the heightened duty owed to Plaintiff as an unrepresented claimant.  As a result, the evidence submitted to the Appeals Council, specifically the medical records from Plaintiff's treating physician and psychologist for the relevant time period, were not secured or evaluated prior to the ALJ's determination.  Because Plaintiff was not given the opportunity to present this evidence at an administrative hearing (and because the ALJ made his determination prior to any meaningful notice to Plaintiff that no hearing would be held), the evidence is certainly new.

Additionally, because Plaintiff was unrepresented and because the ALJ failed to apply a heightened duty to ensure that the administrative proceedings were fair, Plaintiff has shown good cause as to why the evidence was not before the ALJ.  Indeed, had the ALJ fulfilled its duty to Plaintiff to fully and fairly develop the record, the evidence likely would have been before the ALJ. Finally, because the medical records from the relevant time period pertain to treatment for her

alleged disabling impairments, they are material to the determination of Plaintiff's disability. Therefore, the Court finds that remand is appropriate.

Finally, Plaintiff argues that remand is appropriate because the ALJ relied upon Social Security Ruling 85-15, as opposed to a vocational expert, in determining the extent to which her non-exertional limitations affect her ability to work. Doc. No. 9 at 19. The Court need not and will not address this issue in light of the remand for the reasons stated above.

**VI.     Conclusion**

Because the ALJ failed to fully develop the record and to properly afford Plaintiff an opportunity to appear at an administrative hearing, the Court will remand this case in accordance with §405(g).  The case will be remanded for further proceedings consistent with this opinion.  An appropriate order will follow.


<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge


cc: All counsel of record